THELMA FARNSWORTH, appellee, v. IOWA STATE TAX COMMISSION, appellant.

No. 51548.

(Reported in 132 N.W.2d 477)

JANUARY 12, 1965.

Evan L. Hultman, Attorney General, George W. Murray, Special Assistant Attorney General, and Jerry L. Jones, Assistant Attorney General, for appellant.

O'Donohoe & O'Connor, of New Hampton, for appellee.

THOMPSON, J.—Is it the law that "once a daughter-in-law, always a daughter-in-law?" May an individual have as many mothers-in-law as the exigencies of death or divorce permit him marriages? These are the substantial questions to be answered in the case at bar.

The plaintiff was formerly married to John Wilbur Keeling, a son of Elizabeth G. Probert. He died on April 21, 1952, leaving the plaintiff as his widow. There was no issue of this marriage. On March 23, 1953, the plaintiff remarried. Elizabeth G. Probert died testate on January 8, 1962. Her estate included assets of $19,879.85 held in joint tenancy with the plaintiff. The defendant, Iowa State Tax Commission, hereinafter referred to as the commission, undertook to tax this property by virtue of section 450.3(5) of the inheritance tax statutes. It is not contended it was not taxable, but controversy arises over whether the tax should be assessed at the rate of five percent fixed by section 450.10(2), or at ten percent as provided in section 450.10(3). Five percent is the amount fixed when the property passes to certain named classes of persons, including "daughter-in-law." All other classes not included in section 450.10(2), supra, are taxed at ten percent of the appraised value, under section 450.10(3). The point which must be determined is whether the plaintiff, under the facts stated above, was a daughter-in-law at the time of death of the decedent, within the meaning of the inheritance statutes. The trial court held that she was, and entered its judgment that the defendant remit one half of the ten percent inheritance tax it had collected, with interest. So we have this appeal.

■■ I. If the meaning of a taxing statute is uncertain, it must be construed strictly against the taxing authorities. Associated General Contractors v. State Tax Commission, 255 Iowa 673, 676, 123 N.W.2d 922, 924, and cases cited. On the other hand, when the question arises as to whether property is entitled to exemptions, the construction is strictly against the taxpayer. Doubts are construed against the exemption. Clarion Ready Mixed Concrete Co. v. Iowa State Tax Commission, 252

Iowa 500, 508, 107 N.W.2d 553, 558. These principles are well settled. In the instant case we are dealing with a claim of right to tax rather than an exemption. Our pertinent statutes deal with the imposition of a tax. Dennis v. Commissioner of Corporations and Taxation, 340 Mass. 629, 165 N.E.2d 893, 895, 81 A. L. R.2d 1226.

II. Keeping in mind the rule of construction set forth in the foregoing division we turn to the determining question in the case. Was the plaintiff still a daughter-in-law of Elizabeth G. Probert at the time of the latter's death; or had her status as such been ended, either by the death of her husband who was the son of the testatrix, or by her remarriage? In fact the defendant rests its case upon the remarriage. So we must determine whether the relation of mother-in-law and daughter-in-law, once assumed, is permanent, or is terminated by some change in circumstances thereafter occurring.

The question of relations by affinity and their duration has been much before the courts. Some courts have made the distinction that if there is surviving issue of the marriage, the relation by affinity endures; but if there is none, it ends with the death of the party upon whom it depends, or upon a divorce. So various relations by affinity have been considered; questions of stepfather or stepmother, of stepchildren, of the meaning of the terms "widow", "husband of a daughter", "wife of a son", "relatives", and other words used in statutes have been considered and decided in many cases. Likewise, the particular settings in which the questions have arisen are various: incest cases, jury selecting cases, insurance cases involving mutual or fraternal companies where the beneficiaries are limited by statute to those holding certain relationships to the insured, and cases dealing with tax matters such as the one before us have been before the courts of many jurisdictions and have been variously decided. We refer those who wish a thorough analysis and discussion of these authorities to In re Bordeaux Estate, 37 Wash.2d 561, 573, 225 P.2d 433, 26 A. L. R.2d 249, 258. In that case, two stepchildren were involved and the question was as to the classification for inheritance tax purposes which they must pay upon the death of the stepmother from whom the stepchil-

dren received property. The stepchildren were ten and five years of age when their father married the stepmother. This marriage continued for 34 years, when the father died. The stepmother died some years later, leaving property by her will to her stepsons. The only issue of the marriage of the father and stepmother was one child who died in infancy, and of course long before the deaths of the parents.

The Washington Supreme Court exhaustively analyzed the origin of the doctrine of relation by affinity, and the several theories of its termination. It concluded that the death of the father did not terminate the relationship between the stepsons and the stepmother. Significantly, it said: "Thus the cases continued to make the broad general statement that affinity was terminated by the death of one of the parties to the marriage which had created it. In practice, however, the principle was only invoked in the jury and incest cases which had originally given rise to it. So applied, the doctrine did little harm, and, in fact, in most cases, undoubtedly promoted justice. But the continual restatement of the principle, often without any qualification, led to a gradual acceptance of the idea that it had an abstract validity, independent of the jury and incest cases." Loc. cit. 225 P.2d 440. The Washington court then proceeded to show that the doctrine had been too far extended, and should have been limited to the classes of cases—jury and incest—in which it first arose.

In so doing, Simcoke v. Grand Lodge of A. O. U. W. of Iowa, 84 Iowa 383, 51 N.W. 8, 15 L. R. A. 114, was cited, and referred to as a leading case. Loc. cit. 225 P.2d 441. Indeed, we think the Simcoke case, which still expresses the law of Iowa, is determinative of the question before us. It involved the right of a claimed stepson to take, as the named beneficiary, the proceeds of a certificate issued by the defendant, a fraternal benefit society, on the life of the stepfather. Plaintiff's mother, who had married the insured and through whom the relationship arose, had died before the issuance of the certificate. A blood relative of the insured claimed the proceeds, asserting that the stepson was no longer a relative after the death of the mother through whom the affinity arose, and so could not take under

the provisions of the statutes governing fraternal benefit societies. But we said: "A stepfather is a relative by affinity, and the relationship continues after the death of the wife, on whom the relationship depends." Loc. cit. 84 Iowa 387, 51 N.W. 9.

We quoted with approval from Spear v. Robinson, 29 Maine 531: "By the marriage one party thereto holds by affinity the same relation to the kindred of the other that the latter holds by consanguinity, and no rule is known to us under which the relation by affinity is lost on a dissolution of the marriage, more than that by blood is lost by the death of those through whom it is derived. The dissolution of a marriage, once lawful, by death or divorce, has no effect upon the issue; and, it is apprehended, it can have no greater operation to annul the relation of affinity which it produced." Loc. cit. 84 Iowa 388, 51 N.W. 9.

Spear v. Robinson, supra, has been said to represent a minority rule, and it has also been urged that the quoted language was dictum. However that may be, we have approved it and it forms a part of our decision in the Simcoke case.

This case has never been overruled, and still represents the law in Iowa. If the relationship by affinity between a stepfather and stepson continues after the death of the wife and mother upon whom it depends, we see no reason for saying that the relation of mother-in-law and daughter-in-law does not also continue after the death of the son and husband, or indeed upon a remarriage. We are not here dealing with the term "wife of a son", or "widow of a son", which has been before the courts in other jurisdictions. There might be more reason for construing statutes which use these words as ending with a remarriage; but we are unable to distinguish the Simcoke case, on principle and reason, from the one now before us. After a remarriage, the party may have two mothers-in-law, but the former relation is not ended.

In Steele v. Suwalski, 7 Cir., 75 F.2d 885, 888, 99 A. L. R. 588, 592, the court had before it a contest over the right to receive the proceeds of a war risk insurance policy. The successful claimant was the widow of a brother of the deceased soldier, and her husband had died before the death of the insured. It was contended that the death of her husband had

terminated the relation by affinity. The court pointed out that the rule that death of the one upon whom the relationship depends, absent issue of the marriage, terminates the affinity had been mostly, although not always, applied in incest or jury-selecting cases. It said that: "Whether or not death or divorce, in the absence of children, terminates a relationship by affinity, is a matter of local law, as an examination of the authorities above cited will clearly establish." Simcoke v. Grand Lodge A. O. U. W., supra, was cited as determining the law in Iowa, and the federal court also said that the Simcoke case had followed Spear v. Robinson, supra. The final holding of the court was that the sister-in-law had not lost her relationship by affinity to the brother of her husband by the latter's death, but might take the proceeds of the policy.

It is our conclusion that the trial court was correct in its evaluation of the case and its judgment.—Affirmed.

All JUSTICES concur.