**IN THE COURT OF APPEALS OF IOWA**

No. 14-1419
Filed July 22, 2015

**IN THE INTEREST OF C.Y.-E.,**
**Minor Child,**

**N.E., Intervenor,**
**Appellant.**

_____

Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.

Former spouse of a child's biological father appeals following the termination of the father's parental rights, asserting the juvenile court erred in not placing the child in her care, among other things. **AFFIRMED.**

Daniel McClean of McClean & Heavens Law Offices, Dyersville, for appellant intervenor.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Ralph Potter, County Attorney, and Joshua A. Vander Ploeg, Assistant County Attorney, for appellee State.

Zeke R. McCartney of Reynolds & Kenline, L.L.P., Dubuque, attorney and guardian ad litem for minor child.

Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DOYLE, J.**

N.E., the former spouse of a child's biological father, intervened in the child-in-need-of-assistance proceedings. Following the juvenile court's termination of the father's parental rights and various other rulings against N.E., N.E. appeals. She contends the court erred in (1) finding she was no longer the child's stepparent after she and the child's biological father divorced; (2) failing to place the child in her care; (3) denying her due process in the termination-of-parental-rights proceedings in numerous respects; and (4) not recusing itself. We affirm.

### I. Background Facts and Proceedings.

The relevant facts are not disputed by the parties.[1] C.E. is the father and S.Y. is the mother of C.Y.-E., born in March 2012. At the time of the child's birth, the father was married to N.E., whom he married in 2007. The father and N.E. had had marital problems for some time. In 2011, the couple's biological child tragically died in an accident.

C.Y.-E. tested positive for Oxycodone exposure at birth. Because the child's mother was scheduled to serve a jail sentence shortly after the child's birth, the mother arranged that the child be cared for by the father and N.E. Thereafter, the couple sought assistance from the Iowa Department of Human Services (DHS), and a voluntary case was opened and services offered to N.E. and the father.

---

[1] Other background facts may be found in our opinion filed today in the related case *In re C.Y.-E.*, No. 14-0981 (July 22, 2015), affirming the juvenile court's ruling terminating the father's parental rights.

In February 2013, N.E. served the father divorce papers, and the father "responded poorly to this and threatened to harm himself," barricading himself in the bathroom of he and N.E.'s home with a gun. After N.E. called 9-1-1, law enforcement officials responded and entered the home. While looking for the father in the home, methamphetamine precursors and drug paraphernalia were discovered in the basement, leading to the father's arrest for child endangerment and possession of precursors.

Both the father and the child's hair tested positive for methamphetamine thereafter. N.E. denied knowledge of the precursors in their home and the child's exposure to methamphetamine, and she tested negative for illegal substances. Despite the fact N.E. had been the child's primary caregiver since the child's birth, the father requested the child be placed with his relatives because he was angry with N.E. about her seeking a divorce. The child was so placed and has remained in the relatives' care since that time.

In March 2013, the State filed a petition asserting the child was a child in need of assistance (CINA). Prior to the hearing on the State's CINA petition, the juvenile court on April 1, 2013, entered a pre-hearing order directing that the child "be removed from parental custody and placed in the care, custody, and control of [DHS] for appropriate . . . relative placement." Additionally, the court granted N.E.'s request to intervene in the proceedings, and it ordered visitation to include N.E. Thereafter, N.E. had regular visitation with the child, and, by all accounts, was an excellent caregiver to the child.

At the July 2013 disposition hearing, N.E. requested the child be placed with her. DHS recommended leaving the child in the relatives' care because the

child was "doing well, his needs [were] being met, and there [was] no reason to remove him from this home." The mother supported N.E.'s request; the State, the GAL, and the father all supported DHS's recommendation. The court agreed with DHS and left the child in DHS's custody for continued relative placement. The court explained:

> This is a very difficult and close call for the court. Both homes have a significant history with the child. Both homes have approved home studies, and both homes qualify as a placement option. Iowa Code section 232.102(1)(a)(1) [(2013)] allows the court to place the child with "a parent who does not have physical care of the child, other relative, or other suitable person." Although [N.E.] is not a biological relative, she would qualify under the "other suitable person" option. No statutory preference is given for any of these options.
> It is undisputed that removing a child and changing placements is disruptive and confusing for a child and affects their sense of security and stability. The court does not believe removing [the child] from his current placement would be in his best interests at this time. The current arrangement provides for [N.E.] to have [the child] three nights per week. This arrangement allows her to maintain her relationship with [the child] and also preserves her ability to be a long-term placement option should reunification not be successful.

Neither of the parents nor N.E. appealed the dispositional order.

In the fall of 2013, N.E. and the father's dissolution of marriage was finalized. Around the same time, N.E. filed a motion in juvenile court, requesting, among other things, the juvenile court grant concurrent jurisdiction to the district court so she, as the child's stepparent, could be reunited with the child. She also requested the court halt any termination-of-parental-rights proceedings.

Following a hearing, the court denied N.E.'s motion for concurrent jurisdiction, stating:

> Although the court has authority to grant concurrent jurisdiction, the juvenile court is only authorized to terminate a

5

dispositional order if the purposes of the dispositional order have been accomplished and the child is no longer in need of supervision, care, or treatment. *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001); Iowa Code § 232.103(4)(a).

If the court were to grant concurrent jurisdiction and allow [N.E.] to pursue a guardianship in district court, the present dispositional orders would essentially be rendered meaningless. No doubt, this is [N.E.'s] intent and desired outcome, but would be contrary to the code section cited above as the court is unable to find the child is no longer in need of supervision, care, or treatment.

The child remains adjudicated a [CINA] and in the custody of the [DHS], who is statutorily obligated to provide reunification services to the biological parents if and when they are available. A district court guardianship order would prevent the [DHS] from providing those services.

. . . [T]he above matter is currently set for a permanency hearing in February. [N.E.] will still have the ability to appear at the permanency hearing to request consideration as a placement option or request a separate placement hearing. The State and guardian ad litem [(GAL)] supported the denial of [N.E.'s] request for concurrent jurisdiction. [The child's biological mother] supported [N.E.'s] request. Counsel for [the child's father] took no position.

Accordingly, the court finds it would be in the best interest of [the child] for the court to deny the motion for concurrent jurisdiction; continue the [CINA] proceedings; and continue to exercise exclusive jurisdiction over the case.

The biological parents made little to no progress in the case. In January 2014, the State filed its petition seeking termination of the parents' parental rights, and a termination-of-parental-rights hearing was set for February 2014, along with the permanency hearing. DHS, the child's GAL, and the county foster care review board all supported termination of parental rights.

More motions were filed thereafter. The mother sought a continuance because she was to be released in a few months. The father also requested a continuance, challenging his service of the termination-of-parental-rights petition. N.E. requested dismissal of the termination-of-parental-rights petition for numerous reasons, including that the State's petition failed to comply with Iowa

Code section 232.111. She also asserted that termination of the parents' parental rights was not warranted under section 232.116(3) because the child was placed with relatives and termination of parental rights would be detrimental to the child. At the February 2014 hearing, the juvenile court reluctantly granted the father's motion, though it did not believe further delay in the proceedings was in the child's best interests, and it continued the date of the termination-of-parental-rights hearing to April 3, 2014.

More motions were filed. The State requested to amend its petition to address N.E.'s alleged deficiencies in its original termination-of-parental-rights petition. The mother filed a motion noting she had been released from prison and was living with N.E. She requested that she be provided services by DHS and that an immediate hearing be set. She also requested another continuance so she could begin services and work toward reunification with the child. N.E. filed a motion requesting clarification of whether she could supervise visits between the mother and the child. She also filed a motion supporting the mother's motion to continue.

Following a hearing on the remaining motions, the juvenile court on March 19, 2014, entered its order granting N.E.'s request to supervise visits between the child and the mother, as well as the State's motion to amend the petition and its oral request that the termination-of-parental-rights hearing be bifurcated from any placement hearing, should the court grant its termination-of-parental-rights petition. The court denied the remaining motions.

On April 1, 2014, N.E. filed an "Application for Permission to Appeal Juvenile Court Ruling" before the Iowa Supreme Court. She also filed more

motions in juvenile court, including a request that the juvenile court stay the termination-of-parental-rights proceedings pending a ruling on her application to the supreme court. The juvenile court denied N.E.'s motions, but it rescheduled the termination-of-parental-rights hearing to May 2014 due to emergency family issues concerning one of the attorneys for the parties. The Iowa Supreme Court subsequently denied N.E.'s application.

N.E. then filed another request that the juvenile court grant the district court concurrent jurisdiction. Following that filing, the juvenile court entered its ruling denying her request. Additionally, the court noted in its ruling that N.E.'s motion went "way beyond the issues of concurrent jurisdiction," and the court went on to address a few claims it believed N.E. had either inaccurately or misleadingly stated. The court specifically found it did "not believe [N.E.] remain[ed] [the child's] stepmother as statutorily defined. After the dissolution of marriage was finalized, [N.E.'s] relationship through affinity terminated and she became, in a purely legal sense, a 'nonparent' with regard to her rights to [the child]." In response to N.E.'s argument the court "never addressed [her] relationship to [the child]," the court directed her to its dispositional order which found she was an "other suitable person" for placement purposes and did not appeal that ruling. The court also took issue with N.E.'s

> characterization of the history of this case. She state[d]: "The best interests of [the child] dictates that he has returned to his home with [N.E.] and his stepbrother. [N.E.] and stepbrother constitute the family unit in this matter." This language paints a picture which does not reflect the reality of the family dynamics of the time of removal. The "family unit" was in the process of being dissolved through divorce proceedings. The reports clearly indicate [the child] and his father were staying with [N.E.] on a temporary basis. To characterize [N.E.'s home] as [the child's] home under these

circumstances is inconsistent with the documented history of the case. Therefore, the child cannot be "returned" to a home he was never removed from.

The day before the termination-of-parental-rights hearing, N.E. filed three motions, which included a motion to amend and enlarge the juvenile court's prior ruling and one requesting recusal. Her motion to recuse alleged the juvenile court judge was clearly prejudicial and biased towards her because the judge "refuse[d] to accept the fact that the Iowa case law states that the relationship between [the child and N.E.] is one through affinity that has not been terminated due to [N.E.] divorcing [the child's] biological father."

The next day, the termination-of-parental-rights hearing was held. Before testimony was given, N.E. advised the court that several of her motions were still pending. The court noted that N.E. did file several motions the day before which it reviewed the morning of the hearing, but it found those motions did "not pertain to the two issues before the court" in the termination-of-parental-rights proceedings. It advised it intended to address those motions separately at a later time, but N.E. requested the court rule upon its motion for the judge's recusal. N.E. again asserted the judge was

> biased and basically giving [the court's] May 9th order redacted as almost a case plan for DHS and misrepresented the record as it exists, [and N.E. did not] believe [her] interests [would] be served or [the child's] best interest be served if [the judge was] allowed to hear the termination hearing.

The court denied N.E.'s recusal request, finding N.E. did not have standing at that point to make such a motion.

Testimony in the case then began, and the court did not permit N.E.'s counsel to examine the witnesses, the court again finding N.E. did "not have

standing in the termination phase of these hearings." The court allowed N.E.'s counsel to examine the State's witnesses outside of its presence as an offer of proof, but it did not allow her counsel to examine the mother's witnesses or to call her own witnesses. After testimony was concluded, N.E. made another offer of proof outside the presence of the juvenile court, renewing her numerous objections made at the hearing and in her prior motions. N.E. subsequently filed a motion requesting the court admit all testimony given though offers of proof at the termination-of-parental-rights hearing.

Following the hearing, the juvenile court entered its order terminating the biological parents' parental rights. The court in its written ruling acknowledged its oral rulings at the hearing on N.E.'s motions; it did not make any other findings concerning N.E. or her other pending motions. The court followed the required three-step analysis concerning termination of the parents' parental rights. *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). As to the final step, considering "if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights," *see id.*, the court's ruling stated it found there were "no consequential factors weighing against termination [of the parents' parental rights] that require[d] a different conclusion." The court's ruling set a placement hearing for July 2014. The father filed a notice of appeal, and N.E. filed a notice of cross-appeal in the matter.

On June 11, 2014 the juvenile court entered written rulings on N.E.'s motions to admit the offer-of-proof testimony and her prior motion to amend and enlarge filed May 9, 2014. The court denied the motion to amend and enlarge, finding it had sufficiently and thoroughly addressed the issues raised by N.E. in

its prior order  However, the court granted N.E.'s motion to admit the offer-of-proof testimony to the extent it allowed her "to make her record for purposes of appeal."

N.E. subsequently filed more motions in juvenile court.  She requested the juvenile court reconsider its termination-of-parental-rights ruling and that the court "address the [o]ffer of [p]roof by adding it to the record for the May 20, 2014, hearing."  She also filed a motion to continue and another motion for recusal.  The recusal motion requested the judge recuse "himself from any further proceeding in this matter as a clear prejudice and bias exists towards [N.E.]."  The motion also requested recusal "on the basis that [the judge] failed to address [N.E.'s motions filed May 19, 2014]."  N.E. further alleged the court denied her due process by not permitting her to participate fully in the termination-of-parental-rights hearing.  N.E. filed a motion requesting the court stay the proceedings because she and the father were appealing the termination-of-parental-rights ruling.  The court subsequently granted the motion to continue the placement hearing, but entered rulings denying the remaining motions.

N.E. then filed a motion with the Iowa Supreme Court to stay the underlying termination-of-parental-rights proceedings.  The State resisted her request for a stay, and it also filed a motion to dismiss her cross-appeal.

While the appeals and other appellate matters were pending, the permanency-placement proceedings moved forward.  Prior to the July 2014 hearing, the child's GAL filed its report recommending the child continue living with and be adopted by the father's relatives.  Though the GAL found both N.E. and the father's relatives to be viable permanent placement options, the GAL

believed the relatives were a slightly better option because the relatives presented no concerns regarding their care of the child and already viewed the child as part of their family. The GAL noted the child had been in their care at that time for sixteen months and was bonded with the father's relatives and the relatives' children.

On July 28, 2014, the Iowa Supreme Court entered an order concerning the State's motion to dismiss and N.E.'s request for stay. The court determined N.E.'s cross-appeal challenging the termination-of-parental-rights ruling was "interlocutory on the basis that the placement hearing ha[d] not yet taken place," and the court denied the request for a stay. N.E. then filed a motion for reconsideration.

A permanency placement hearing was held on July 31, 2014. N.E. advised the juvenile court the father's appeal and its motion for reconsideration were still pending in appellate court, and she requested the permanency hearing be stayed until her motion and the father's appeal were ruled upon. The State and the GAL resisted. The court denied N.E.'s request, finding that if the father's appeal was granted, it would not matter who the court placed the child with at the present hearing, as the CINA case would reopen with reunification services. N.E. renewed her motion for recusal, which the court denied. N.E. then proceeded to call several witnesses, all generally agreeing the child would do well in either N.E.'s or the father's relatives' home.

Following the hearing, the juvenile court entered its ruling placing the child in the guardianship of DHS pursuant to Iowa Code section 232.117(3), to move forward with establishing a stable placement for the child by adoption or other

permanent placement. The next day, the Iowa Supreme Court entered its order denying N.E.'s motion for reconsideration.

N.E. now appeals.[2] She contends the juvenile court erred in "not reunifying the minor child with [her] and [his] stepbrother following removal from the family home" and in "not concluding [N.E.] remains the minor child's stepmother through affinity." She also asserts she was denied due process when the juvenile court disallowed her participation in the termination-of-parental-rights proceedings, denied her motions for concurrent jurisdiction, and denied her "the right to continue contact with the minor child following the permanency hearing." Finally, she maintains the juvenile court judge erred in not recusing himself from the matter because he was "clearl[ly] bias[ed]" against N.E. and her counsel.

## II. Scope and Standards of Review.

We ordinarily review CINA and termination-of-parental-rights proceedings de novo. *See In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014). This requires that we "review both the facts and the law, and we adjudicate rights anew." *Id.* (internal quotation marks omitted). However, to the extent the issue requires statutory interpretation, our review is for correction of errors at law. *See id.* "We review a court's decision to recuse or not to recuse itself for an abuse of

---

[2] We note that on June 23, 2015, the Iowa Supreme Court filed an order concerning this case, N.E.'s interlocutory appeal numbered 14-0554, and the father's appeal of the termination of his parental rights numbered 14-0981, explaining this case and the father's appeal were delayed after the clerk of the supreme court issued procedendo in N.E.'s interlocutory appeal in 14-0554 and the entire file was inadvertently closed. The supreme court ordered the "appeal shall be transferred immediately to the court of appeals for disposition," and this case was transferred to this court the same day.

discretion." *Taylor v. State*, 632 N.W.2d 891, 893 (Iowa 2001). "As always, our fundamental concern is the child's best interests." *J.C.*, 857 N.W.2d at 500.

### III. Discussion.

### A. Stepparent Status.

First and foremost, the question before us is whether N.E.'s relationship with the child is equal to that of a parent, given that she was the child's primary caregiver for the first year of his life and was married to, but has since divorced, the child's biological father. Her status determines the services required to be offered to her for reunification, if any, as well as her due process rights in the case.

N.E. states that "[t]he Iowa Supreme Court recognizes affinity remains intact despite divorce," citing *Farnsworth v. Iowa State Tax Commission*, 132 N.W.2d 477 (Iowa 1965). In that case, the Iowa Supreme Court was faced with the questions: "'[O]nce a daughter-in-law, always a daughter-in-law?' May an individual have as many mothers-in-law as the exigencies of death or divorce permit him marriages?" *Id.* at 478. Though the latter includes the word "divorce," the facts in *Farnsworth* only concerned the death of a former spouse. *See id.*

Specifically, in *Farnsworth*, Thelma Farnsworth was formerly married to Elizabeth Probert's son, John. *Id.* John died, leaving Thelma a widow. *Id.* Thelma remarried a year later. *Id.* Not quite ten years after John's death, John's mother Elizabeth died, leaving assets of $19,879.85 she held in joint tenancy with Thelma. *Id.* There was no question that Thelma would inherit the property; the issue was at what rate her inheritance would be taxed—five percent as Elizabeth's daughter-in-law or ten percent as a non-relative. *Id.* (citing Iowa

Code § 450.3 (1965), which sets forth rates of taxation on inheritance for certain classes of people and businesses). The court noted if it found the taxation statute to be ambiguous, it was required to strictly construe the statute "against the taxing authorities." *See id.* With that backdrop, the court cited a prior case, wherein it concluded that a stepfather "is a relative by affinity, and the relationship continues after the death of the wife, on whom the relationship depends." *Id.* at 480 (citing *Simcoke v. Grand Lodge A.O.U.W. of Iowa*, 51 N.W. 8, 9 (Iowa 1892)). In *Simcoke*, the court, quoting another court, further stated:

> By the marriage, one party thereto holds by affinity the same relation to the kindred of the other that the latter holds by consanguinity, and no rule is known to us under which the relation by affinity is lost on a dissolution of the marriage, more than that by blood is lost by the death of those through whom it is derived. The dissolution of a marriage, once lawful, by death or divorce, has no effect upon the issue; and, it is apprehended, it can have no greater operation to annul the relation of affinity, which it produced.

> There is nothing in the spirit or purpose of the law that indicates to us that relatives by affinity are not within the legislative intent.

51 N.W. at 9-10 (quoting *Spear v. Robinson*, 29 Me. 531, 545 (1849)). In *Farnsworth*, the court did not overrule *Simcoke*, stating

> *Spear v. Robinson* . . . has been said to represent a minority rule, and it has also been urged that the quoted language [in *Simcoke*] was dictum. However, that may be, we have approved it and it forms a part of our decision in the *Simcoke* case.
>     This case has never been overruled, and still represents the law in Iowa. If the relationship by affinity between a stepfather and stepson continues after the death of the wife and mother upon whom it depends, we see no reason for saying that the relation of mother-in-law and daughter-in-law does not also continue after the death of the son and husband, or indeed upon a remarriage. We are not here dealing with the term 'wife of a son', or 'widow of a son', which have been before the courts in other jurisdictions. There might be more reason for construing statutes which use

these words as ending with a remarriage; but we are unable to distinguish the *Simcoke* case, on principle and reason, from the one now before us. After a remarriage, the party may have two mothers-in-law, but the former relation is not ended.

132 N.W.2d at 480. It is the language from the *Simcoke* case upon which N.E. asserts she is still the child's stepmother by affinity.

Arguably, the only part of *Simcoke* that remains good law is the part that related directly to the court's decision: the status of affinity after the death of a spouse.[3] *See id.* In any event, even assuming without deciding that the portions of *Simcoke* and *Farnsworth* stating the relationship by affinity survives divorce, we find that of no help to N.E. under the relevant CINA statutes.

Although the Iowa "legislature has specifically directed courts to liberally construe Iowa Code chapter 232 to achieve 'the care, guidance and control that will best serve the child's welfare and the best interest of the state,'" the Iowa Supreme Court has determined the "legislature crafted a narrow and specific definition of 'parent' under chapter 232," which unambiguously defines a "parent" as either the "'biological or adoptive mother or father.'" *J.C.*, 857 N.W.2d at 501,

---

[3] Even in *Farnsworth* the court noted that its prior holding in *Simcoke* was a minority opinion and left room for reinterpretation of the issue under different facts. *See Farnsworth*, 132 N.W.2d at 480. Since that time, the court, in other circumstances, has found that "a stepparent cannot be considered a natural parent against the stepparent's will and cannot be required to pay child support. The logical extension of our case law is that a stepparent is not treated as a natural parent and is, therefore, not entitled to visitation." *In re Ash*, 507 N.W.2d 400, 404 (Iowa 1993) (internal citations omitted); *see also* 41 Am. Jur. 2d *Husband and Wife* § 4 (2014) (and cases cited therein for the proposition that "[a]ffinity relationships arise out of marriage and are always terminated by divorce"). Nevertheless, as one commenter noted, *Simcoke* is "still considered as a leading authority," *see* 13 Julie L. Pulkrabeka & Gary J. Schmita, *Iowa Practice Series: Probate* § 14:47, n.4 (2014), and we are bound by our supreme court's pronouncements. *See State v. Hughes*, 457 N.W.2d 25, 28 (Iowa Ct. App. 1990) (*citing State v. Eichler*, 83 N.W.2d 576, 578 (1957) ("If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves.")); *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent.").

504 (quoting Iowa Code § 232.1, .2(39)). N.E. is neither in relation to the child. *See id.* (holding an established father, wherein the child was born during the marriage but a paternity test determined the father was not the child's biological parent, was not a "parent" under the definition of "parent" in section 232.2(39) and that it would "not expand or extend these statutes to include established fathers when the text of the statutes demonstrates the legislature's intent not to do so"). The legislature could have easily included "stepparent" within the definition of "parent," and it chose not to. *See id.* Particularly telling is the fact the term "stepparent" is used in the same section under the definition of "custodian," which is defined as "a stepparent or a relative within the fourth degree of consanguinity to a child who has assumed responsibility for that child." Iowa Code § 232.2(11)(a). That same section sets out the rights of a custodian and specifically states "[a]ll rights and duties of a custodian shall be subject to any residual rights and duties remaining in a parent or guardian." *See id.* § 232.2(11)(b), (c). Consequently, it is clear that the rights of a "stepparent" are not equal to that of a parent. *See id.* Thus, even if N.E. remained the child's stepparent, her rights were not elevated to those of a parent. *See id.*

"The juvenile court has exclusive jurisdiction over CINA proceedings," and such "proceedings may not take place without the presence of statutorily identified necessary parties." *J.C.*, 857 N.W.2d at 501 (citing Iowa Code § 232.61(1)). The necessary parties under Iowa Code section 232.91(1) include "the child's parent, guardian, custodian, or [GAL]." Though N.E. cites the definition of "custodian" in her brief, she does not assert she is the child's guardian, custodian, or GAL. Rather, she only contends she is the child's parent

because she was his stepparent by affinity. "Juvenile courts clearly have the authority to make the factual determination of whether a person qualifies as a necessary party, which inherently requires them to determine whether a person qualifies as a child's biological parent." *J.C.*, 857 N.W.2d at 506. Here, N.E. was not the child's biological parent nor his adoptive parent. As our supreme court explained in *J.C.*:

> Efficient and timely resolution of juvenile proceedings serves the interests of the child and the state. Our statutes and court rules reflect this proposition. "It is the public policy of the state of Iowa that proceedings involving . . . [CINA] be concluded at the earliest possible time consistent with a fair hearing to all parties." Iowa Ct. R. 8.7. An adjudicatory hearing on a CINA petition must "be held within 60 days of the filing of said petition unless good cause to the contrary is shown." *Id.* r. 8.11. A permanency hearing "for a child subject to out-of-home placement" must "be held within twelve months of the date the child was removed from the home." Iowa Code § 232.104(1)(a)(1); *see also id.* § 232.104(1)(a)(2) (requiring a permanency hearing within thirty days if "the court has waived reasonable efforts requirements under section 232.102"). Our statutes and court rules reflect the understanding that promptly resolved juvenile proceedings best serve children's interests.
>
> Courts are obliged to move urgently to achieve the ends that will best serve the child's interests because childhood does not "await the wanderings of judicial process." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). By narrowly defining "parent" under chapter 232, and thereby narrowing the scope of necessary parties under Iowa Code section 232.91(1), the legislature gave courts another tool to resolve juvenile proceedings in a timely fashion. Were we to expand on the express language of the two statutes, we would impede the legislature's worthy objective. . . . [I]t is good policy to narrow the number of necessary parties to avoid superfluous litigation that will bog down timely decision making for children in need of assistance and distract the court from the core issue of the child's best interest. The express language of the statutes at issue in this case serves the best interests of the child.

*Id.* at 502-03 (internal block quote omitted).

Because we agree with the juvenile court's ultimate conclusion that N.E. was not a parent within the statutory definition of "parent," we affirm on that issue.

### B. Due Process.

Having found N.E. was not a "parent" within the definition of chapter 232, we turn to the question of whether her due process rights were violated when the juvenile court disallowed her participation in the termination-of-parental-rights proceedings, denied her motions for concurrent jurisdiction, and denied her "the right to continue contact with the minor child following the permanency hearing."

The United States Constitution and the Iowa Constitution both prohibit persons being deprived of "life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 9, and "[d]ue process must be afforded when an individual is threatened by state action which will deprive the individual of a protected liberty or property interest." *Callender v. Skiles*, 591 N.W.2d 182, 189 (Iowa 1999). Thus, due process concerns protected liberties and interests. *See id.* The protected liberties concerning children arise by way of a biological or adoptive link. *See id.* at 190. "Thus, we have a strong history of providing due process protection to parents." *Id.* We have already determined N.E. is not a parent within the definition of chapter 232.

### 1. Termination-of-Parental-Rights Hearing.

Here, N.E. was permitted to intervene as soon as her then husband denied her visitation with the child, which was before the child was even adjudicated a CINA. The court considered her at the dispositional phase as a placement option, but it declined to place the child with her. She made no

argument then as to her rights as a "stepparent," nor did she appeal the dispositional order, challenging the court's placement determination. She cannot challenge that determination here. *See In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994) (noting that principles of res judicata preclude a court from relitigating an issue that has previously been decided); *In re J.B.*, 584 N.W.2d 577, 581 (Iowa Ct. App. 1998) (finding mother's failure to appeal from any of the CINA proceedings waived deficiencies in those proceedings).

The court also allowed N.E. to participate in the termination-of-parental-rights case, though it specifically disallowed her participation in the termination-of-parental-rights hearing. Because N.E. was not the child's parent, N.E. was not a necessary party to the termination-of-parental hearing. Though arguably N.E. may have been a person standing in the place of the biological parents of the child when the case began, *see* Iowa Code § 232.111(4)(b)(6), it was the child's biological father who requested the child be placed with his relatives. After the CINA proceedings were initiated, the child's placement with the relatives continued and was again reaffirmed by the court's disposition order, which N.E. did not appeal. By the time the biological parents took interest in the case, which was after termination of parental rights was recommended, the child had been in the relatives' care for at least nine months, almost as long as the child had been in N.E.'s care as an infant. By the time of the termination-of-parental-rights hearing in May 2014, the child had been in the care of the father's relatives for sixteen months of his young life. Though we have no question of N.E.'s love for the child, we do not find error with the juvenile court's decision disallowing N.E. to participate further in the termination-of-parental-rights hearing or in denying her

motions for concurrent jurisdiction because she was not the child's parent. *See J.C.*, 857 N.W.2d at 505. Nevertheless, even if we were to conclude the juvenile court erred in denying N.E. the right to participate in the termination-of-parental-rights hearing, it permitted N.E. to make offers of proof in the matter, and we find she was therefore not prejudiced by the court's restriction of her right to participate in that hearing.

### 2. *Permanency Hearing Following Termination of Parental Rights.*

She also asserts her due process rights were violated when the juvenile court at the permanency hearing continued the child's custody with DHS. She maintains:

> During the pendency of this action, instead of acting in the minor child's best interests, DHS and the juvenile court [have] consistently attempted to find ways to exclude [N.E.] from guardianship of the minor child or in the alternative, adoption of the minor child. [On appeal, this court] should find that the juvenile court violated [N.E.'s] procedural due process rights . . . and find that a guardianship should be established between [N.E.] and minor child or in the alternative remove DHS from this matter so that [N.E.] may be given a fair opportunity to be considered for placement.

However, having found N.E. is not a parent within the definition of Iowa Code chapter 232, we cannot say that the juvenile court's rulings placing the child in the guardianship and custody of DHS in any way violates N.E.'s due process rights.

N.E., as a "suitable person," had a right to intervene and participate in the proceedings subsequent to termination of the parents' parental rights. *See* Iowa Code § 232.117(3); *J.C.*, 857 N.W.2d at 507-08. The juvenile court allowed her to do so. She participated in the placement hearing after the parents' parental rights were terminated. It does not necessarily follow that because the court did

not grant her request for placement that it violated her due process rights. The court considered both homes and chose the fathers' relatives as the home that should continue to care for the child. Upon our de novo review of the record, we do not find any reason to disturb the juvenile court's ruling, nor do we find it violated N.E.'s due process rights. We therefore affirm on this issue.

### C. Child's Best Interests.

N.E. challenges the juvenile court's best interests determinations. She maintains her home is the only home the child has ever known, and "she can best provide for the minor child's needs." She further argues it is not in the child's best interests to be separated from his stepsibling—N.E.'s child that is unrelated to the child in interest by blood. She asserts she should have been reunified with the child and granted concurrent jurisdiction to pursue a guardianship. We disagree.

Though there is no question that N.E.'s home was the child's home for the first year of his life, it has not been his home since the father requested the child be placed in the care of the father's relatives. While N.E. implies DHS's placement of the child with the father's relatives was done for nefarious reasons, the record evidences DHS's case worker and service provider were against the father's request for the child to be placed with the father's relatives, since the father was only doing it to hurt N.E. But the DHS case worker reasoned the father's parental rights trumped those of his soon to be ex-wife N.E. who was not the child's biological parent. It is unfortunate that the father used his status as the child's parent to hurt N.E., but that is what happened here.

Thereafter, the district court determined the child should continue in the care of the relatives at disposition, and N.E. did not appeal that determination. Fortunately for the child, the child was able to remain in contact with N.E. and stepsibling while in the good care of relatives. As noted above, the child's best interests are our paramount concern. *See J.C.*, 857 N.W.2d at 500. Though the child may share a bond with N.E. and N.E.'s biological child, the child is also bonded with the fathers' relatives and their children and is arguably more related to those relatives than to N.E. and her child. By the time of the termination-of-parental-rights hearing, the child had been with the fathers' relatives longer than he had been with N.E. The juvenile court found it was in the child's best interests to continue in juvenile court rather than grant concurrent jurisdiction to the district court because the child was still a CINA. Given N.E.'s lack of status as a parent, along with her impending divorce from the child's biological father and his request to have the child placed with relatives, we do not find the juvenile court erred in finding it was not in the child's best interests to set reunification with N.E. as the goal in the case or to grant her requests for concurrent jurisdiction to pursue a guardianship.

### D. Recusal.

Finally, N.E. argues the juvenile court erred in not recusing itself from the case. Though we question whether she even had standing to assert this argument, at least at the termination-of-parental-rights hearing, we choose to address her argument, finding it to be without merit.

"The burden of showing grounds for recusal is on the party seeking recusal." *In re S.D.*, 671 N.W.2d 522, 528 (Iowa Ct. App. 2003). This is a

substantial burden and requires a finding that the trial judge's decision was an abuse of discretion, which will only be found if the trial court clearly acted unreasonably or exercised its discretion on untenable grounds. *See id.*; *see also In re Marriage of Wagner*, 604 N.W.2d 605, 608 (Iowa 2000). Moreover, the appearance of impropriety is not sufficient; "[a]ctual prejudice must be shown." *In re C.W.*, 522 N.W.2d 113, 117 (Iowa Ct. App. 1994). Pursuant to Iowa Code section 602.1606(a), "[a] judicial officer is disqualified from acting in a proceeding . . . if . . . [t]he judicial officer has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

Here, N.E. alleges the juvenile court was clearly biased because it ruled against her. Additionally, N.E.'s counsel asserts the juvenile court judge was biased against him personally because that judge "failed to appoint him as a [GAL] for at least seven years." Having reviewed the record de novo, we find no evidence of bias on the juvenile court judge's part in this case. Moreover, we find N.E. has failed to establish any actual prejudice against her. The court's rulings are well-reasoned, and we affirm them here. Though we believe N.E.'s counsel was representing N.E. zealously, the multiplicious motions filed by N.E. in this case, particularly after the termination-of-parental-rights petition was filed, seem a little over the top. No doubt the juvenile court was frustrated with addressing issues it had already ruled upon and addressed in prior motions and hearings. Nevertheless, we do not find this frustration, if any, evidenced any actual bias or prejudice on the part of the juvenile court judge. The judge permitted N.E. to participate in most of the proceedings and entertained her motions in a timely

manner. The juvenile court judge simply had no obligation to recuse himself under the facts of this case. We therefore conclude the juvenile court did not abuse its discretion in not recusing itself from the juvenile court proceedings.

*IV. Conclusion.*

For all of these reasons, we affirm the juvenile court's rulings with respect to N.E.

**AFFIRMED.**