**In the Interest of A.B., A Minor Child,**

**P.L., Natural Father, Appellant,**

v.

**STATE of Iowa, Appellee.**

**No. 88–390.**

Supreme Court of Iowa.

Sept. 20, 1989.

Steven Gardner of Kiple, Kiple, Denefe & Beaver, Ottumwa, for natural father, appellant.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Katherine S. Miller–Todd, Asst. Atty. Gen., for appellee.

Kirk A. Dailey, Ottumwa, Guardian ad Litem for minor child.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, CARTER, and SNELL, JJ.

SNELL, Justice.

The State of Iowa, pursuant to Iowa Code chapter 232 (1985), on juvenile justice, petitioned the court to declare that A.B. was a child in need of assistance. The court of appeals decision remanded the matter to the district court for an order placing A.B. in her father's custody with appropriate orders for suspension and additional family services. Those orders were directed to be determined upon hearing before a different judicial officer than the juvenile referee who entered the dispositional order. Upon the State's request, we granted further review of this aspect of the appellate decision. The natural mother joined in the State's application.

The juvenile referee in its decision of October 1985, removed A.B., then age two, from her mother's home and placed her in foster care. In a review hearing conducted in December 1987 the referee confirmed the 1985 placement and ordered the State to file an amended petition alleging A.B. to be a child in need of assistance with respect to her father. In February 1988, A.B.'s

father, P.L., filed a motion for change of judge which was denied by the district court. That same month, P.L. filed an application for review of the juvenile referee's decision claiming bias. The district court affirmed the findings and order of the juvenile referee.

On appeal P.L. again complained about the conduct of the referee, asserting that he had not been given a fair hearing. Neither the district court nor the court of appeals made any finding of prejudice on the part of the referee nor that a fair and impartial hearing had not been accorded the father. Notwithstanding a finding by the court of appeals that it was unnecessary to address this issue, it remanded the case to be heard before a different judicial officer. Its stated reason was to avoid the appearance of unfairness in our judicial system.

We have not hesitated to assign a case for hearing before another judge when prejudice is shown. Our review of the judicial conduct pervading *In the Interest of Welcher*, 243 N.W.2d 841 (Iowa 1976), convinced us that prejudice by the magistrate was apparent. Upon remand the cause was ordered to be assigned to a district court judge for continuous exercise of jurisdiction until final termination of the proceeding.

In the instant case when this issue was raised before the district court judge a full hearing was held at which the referee testified fully and was thoroughly cross-examined. The thrust of P.L.'s charge of prejudice comes from the referee's questioning of the social workers at the disposition hearing regarding the behavior of A.B.'s father.

At that hearing the referee became aware of allegations that the father drank alcoholic beverages in disregard of the court's order, discontinued taking antabuse, missed visitation appointments, gave poor health care to A.B. and had serious discord in his home with his wife. None of these matters were mentioned in the report submitted to the referee by the Iowa Department of Human Services which recommended that custody of A.B. be placed with her father. Due to these omissions the referee orally examined those witnesses present from the Department of Human Services to find out if they were were aware of these allegations and to determine what significance they bore on the custody recommendation.

When the referee was questioned about his conduct during these examinations, he candidly acknowledged that he was perturbed that these matters were not mentioned in the report to the court by the Department of Human Services. He felt that it was a prerequisite for a good social worker to report these matters to the court. When that was not done he felt it was the court's duty to elicit all the facts since it is the court's ultimate responsibility to protect the child. If his obligation to ask questions to get responses on these matters resulted in a witness's feeling intimidated or oppressed, he regretted it, but it was necessary. The juvenile referee further stated that he felt no bias against A.B.'s father, and in fact, had entered the hearing expecting to grant custody to him.

The district court judge who heard the testimony found that prejudice against P.L. by the juvenile referee had not been established. Our review of the record convinces us that the referee was acting not from a framework of prejudice against P.L. but out of a proper concern to bring out the facts and determine custody in the best interest of A.B.

The order by the court of appeals that further hearings be conduced before a different judicial officer follows from a laudable concern for the appearance of impartiality. However, it also proceeds without any finding of prejudice by the referee on which to base a disqualification. As a matter of judicial economy, it is meet to continue with the judicial officer who is most conversant with the case. Moreover, to change judicial officers whenever a party claimed there was an appearance of impropriety would cause an unmanageable disruption in the functioning of our judicial system. We vacate that part of the order addressed herein.

COURT OF APPEALS DECISION VACATED IN PART.