**In the Interest of C.W., A Minor Child.**

**L.W., Mother, Appellant.**

**No. 94–0078.**

Court of Appeals of Iowa.

Aug. 4, 1994.

Mark D. Reed of Bertroche Law Offices, Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Katherine S. Miller–Todd, Asst. Atty. Gen., for appellee-State.

James C. Larew of Larew Law Office, Iowa City, appellee-guardian ad litem, for minor child.

Considered by HAYDEN, P.J., and SACKETT and CADY, JJ.

SACKETT, Judge.

Linda appeals a trial court order terminating her parental rights to her daughter Casey, born September 30, 1988. Linda contends: (1) there was not clear and convincing evidence supporting the termination; (2) it was not in Casey's best interest her parental rights be terminated; and (3) the trial court should have recused itself. We affirm.

Linda has given birth to four children. Casey is her youngest. Linda's parental rights to her three older children were terminated on April 17, 1989. At the time of Casey's birth, Linda's older children, her half-siblings, were in foster care.

In May 1990 a child in need of assistance petition was filed seeking to have Casey found to be a child in need of assistance because of conditions in Linda's apartment. Those conditions specified in the petition were broken glass on the kitchen floor, unstable stacks of pots and pans, dishes containing leftover food that was spoiled and appeared to be developing mold, sharp knives near the edge of the stove and coun-ter-top, broken glasses with cigarette butts and ashes, a fan without a protective cover, an aspirin bottle at the edge of the bathroom sink, a baby crib with no sheet contained drying vomit, an overturned television set and a trash can in the middle of Casey's room. Linda contended a friend had used her apartment while she was gone and allowed the conditions to exist. The court found Casey to be a child in need of assistance but determined Linda had corrected her living conditions, and Casey was allowed to remain in her care.

The record reflects that following this hearing, Linda took good care of Casey and diligently met with a family therapist and attended AA meetings.

In early 1991 the State sought to conclude the case and the attorney and guardian ad litem for Casey objected. The attorney and guardian ad litem based their recommendations on the status of the mother's substance abuse problems and the fact Linda's father was soon to be released from prison, and he posed a danger to his family. The attorney and guardian ad litem recommended continual monitoring. However; on February 20, 1991, the action was dismissed.

On August 12, 1991, the state obtained an emergency order removing Casey from her mother's care. The facts alleged in support of the order were Casey was left with Nancy, a friend of Linda's, because Linda had no home and Casey was left without a medical release or provisions for medical coverage, and Linda could only be contacted through a third person. On August 15, 1991, Casey was returned to Linda's care and subsequently ordered to remain in her mother's care under protective supervision by the Iowa Department of Human Services.

Linda and Casey were accepted in the House of Mercy program in Des Moines. Linda's acceptance in the program was part of her probation for a felony check charge she was sentenced for in July 1989, and ordered to serve five years probation. The attendance was ordered as a result of a probation violation. Linda had been found to be using alcohol in violation of a probation requirement.

The House of Mercy program is a program for mothers with substance abuse problems and provides, in a number of cases, for the child to live at the facility with the mother. Unfortunately, Casey's problems were too difficult to be addressed in the child care setting at the House of Mercy, and the House of Mercy staff recommended several Des Moines placements for Casey, but there was no funding for her therapy and limited funding for her to attend a care center. Linda's funding for therapy was denied because she had failed to follow through on what was referred to as "Promise Job."

Consequently, Linda was discharged from the House of Mercy on June 30, 1992. The letter advising Linda of her discharge related there was not sufficient funding for needed therapy services for Casey, and the center determined there could not be a sufficient benefit to Linda and Casey because the House of Mercy did not have a child and family therapist on their staff and Linda had been unwilling to recognize the need of therapy for herself and was reported to have engaged in sexual activity on their property. Linda left the program and was put in the Community Correction Center in Cedar Rapids, and Casey was placed in foster care. This was in July 1992. Casey's placement with her first foster care family lasted until January 1993, when she was moved to her present family.

Linda and Casey were referred to Tanager Place and Tanager Place's personnel supervised and monitored a number of visits and found interaction between Casey and her mother to be satisfactory, but not without problems. When Casey was moved to her current foster care placement, visits commenced being supervised by Systems Unlimited.

Linda was discharged from Community Correctional Center on January 22, 1993, and went to live with family members because it was the only housing available to her. After Linda's discharge, a program referred to as FACT began working with Linda. It was determined Linda performed well in visitations but FACT said she was autocratic in her style of approaching Casey and suggested consequences, choices, and redirections.

Linda tried to work with Casey as directed. FACT observed Linda displayed good nurturing skills and she was patient and loving and listened to Casey.

Linda was to have parenting classes, etc. and attend AA meetings. She said she has remained sober but cannot attend all meetings because of transportation problems. She completed all scheduled appointments with her probation officer.

The file goes on with new provisions and a duplication of many of the services offered earlier, ultimately resulting in a petition being filed for termination of Linda's parental rights.

At the time of the termination hearing, Linda was thirty-one years old.

In terminating Linda's parental rights, the court found Linda failed to remain substance free which resulted in her probation being revoked and in losing her low-income housing. The court also found Linda was required to get her G.E.D. and job training so she could support herself and Casey. The court found Linda has only worked on her G.E.D. and has had a job for about a month as a housekeeper and was convicted of an assault when she got in a fight with a woman outside a bar.

The court went on to find housing has been a constant problem for Linda and she seems to be homeless and she and Casey have lived with persons who should not have contact with Casey.

The court found Linda maintained most visitations but visitation had to be held in parks and public buildings because she had no home, and she has not been as regular in attending when transportation is not provided. The court also found fifteen agencies have tried to save Casey from the environment her mother's care provided, and there was no reason to believe Casey's future will be better in her mother's care.

Casey has been identified as a child with problems. She is aggressive, uses foul language, and has engaged in sexually inappropriate behavior.

Casey's current foster parents have had a very positive influence on her. They are

well-educated and indicate adoption is a possibility.

Linda, who was sexually abused by her birth father, has abused drugs and alcohol and is still on probation for a forgery charge. She only completed 9th grade, but is seeking to complete her high school education through a G.E.D. program.

Linda and Casey have a strong bond acknowledged by a number of persons involved with their lives. Linda has made an effort to attend treatment programs and attend scheduled visitations with Casey. She has been evaluated a number of times by a number of different professionals. There is no evidence Linda has ever sexually or physically abused Casey.

We first address Linda's contention there is not clear and convincing evidence supporting termination.

■ The state bears the burden of proving the allegations of its petition by clear and convincing evidence. *See In re Chad,* 318 N.W.2d 213, 219 (Iowa 1982); *In re T.B.B.,* 460 N.W.2d 881, 882 (Iowa App.1990).

■ We review de novo. *In re W.G.,* 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied sub nom. J.G. v. Tauke,* 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *In re W.G.,* 349 N.W.2d at 491–92.

The juvenile court terminated Casey's parental rights under Iowa Code section 232.-116(1)(e) and (f).

■ Linda contends the trial court incorrectly applied section 232.116(1)(f) because one of the provisions of section 232.-116(1)(f)(2) is that:

(2) The court has terminated parental rights pursuant to section 232.117 with respect to another child *who is a member of the same family.* (Emphasis added).

Linda argues this section is not applicable because her three older children were Casey's half-siblings and she is their only common biological parent. She argues, there-fore, because Casey and Linda's other children have different fathers, they are not members of the same family. We reject this argument.

■ Linda's second argument is, with additional time, the problems can be corrected. She claims the state did not show otherwise. The juvenile court found fifteen agencies have worked with Linda and Casey. A review of the volumes of reports, evaluations and suggested plans for reunification reveal considerable duplication of efforts. The state expended substantial financial resources. Linda suffers a number of problems. The major problems identified by the juvenile court in terminating parental rights were:

1. lack of housing;
2. substance abuse;
3. insufficient education; and
4. lack of employment.

The services did not assist Linda in correcting the problems that resulted in termination. A review of the record makes it clear Linda has cooperated to a large extent in the counseling, programs, evaluations, and visitations. There is no evidence she has ever sexually or physically abused Casey. The opinions of a number of the providers are she loves Casey, is bonded to her and she to her and, in a large number of instances, she has functioned as an appropriate parent.

The state correctly advances the record shows Linda has lived in a number of homes; she has been involved in domestic violence; she was hospitalized for an overdose of prescription and over-the-counter drugs; she has not obtained all the suggested mental and substance abuse treatments; she was convicted of forgery and driving while her license was under suspension; she has received unfavorable reports from some agencies; she lost her probationary status because she abused substances; and she has not complied with the litany of requirements of various case plans in their entirety.

Whether the failure of the many services to achieve the desired result is the fault of the service providers or the fault of Linda is not clear. With the money the state has spent paying persons allegedly expert in assisting persons with Linda's problems, we

would have hoped for better results, although we recognize Linda has deficiencies.

We agree with the juvenile court that more of the same type of services are not going to result in reunifications of Casey and her mother. We also recognize Casey will be better served with the knowledge that she has stability and will remain in one household. If her foster parents adopt her, she, barring unforeseen circumstances in their home, will have stability. Although, clearly, she will not forget her mother and the evidence in the record is not sufficient to assess what effect the termination of this relationship will have on her life now and in the future.

■ We accept the juvenile court's decision that the state has met its burden on the issue raised in Linda's brief. While efforts specifically tailored to Linda's needs (particularly one finding housing for she and Casey) might have reunified this family, Linda did not challenge the offered services or request specific services tailored to her specific problems. A parent's challenge to services should be made when they are offered. *In re C.D.*, 508 N.W.2d 97, 101 (Iowa App.1993).

■ Linda next contends it is not in Casey's best interest to terminate her parental rights. We have addressed Casey's interests in response to the first argument advanced by Linda and will not repeat this discussion. We are granted two alternatives, that is, either terminate Casey's parental rights or order further reunification efforts with her mother. The question is which alternative is better. If Casey is adopted by her current foster parents, the record would support a finding termination and adoption is probably in her better interest.

■ Linda's last argument is the juvenile judge should have recused herself.

During a recess during trial, the juvenile judge mentioned she recalled a recent criminal drug case that she had involvement with where Linda's name was on the lease and after a search warrant was issued, evidence was seized showing crack cocaine was being cooked in baby food jars on the premises Linda leased. When the judge called this to the attention of the mother's counsel, he asked the judge to recuse herself and said:

[W]e're not alleging that you have personal bias or prejudice against [the mother], but to avoid the appearance of impropriety, we would request you recuse yourself from this proceeding so that the decision in the case is based solely upon the evidence introduced in court and is not based upon some subconscious or something that comes from prior dealings such as what you have just outlined with the crack cocaine and all that.

The guardian ad litem for the child had told the juvenile court the mother was at the Community Corrections Center when the drug activity occurred and she was not involved in the facts relating to the drug activity. Her brother was responsible for payment of the lease.

Linda contends the judge was disqualified under Iowa Code section 602.1606 from acting in the proceeding without the consent of the parties because she "has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding." Linda advances the question of whether she still suffered a substance abuse problem was a very focal issue in the proceedings and, but for the judge's out-of-court knowledge of the evidence concerning possible complicity in drug-related matters, would not have been presented.

■ Actual prejudice must be shown before a recusal is necessary. The appearance of impropriety is not sufficient to merit recusal. *In re A.B.*, 445 N.W.2d 783, 784 (Iowa 1989). Linda did not show actual prejudice when she requested the recusal, and she has not shown it on appeal.

**AFFIRMED.**

CADY, J., concurs.

HAYDEN, P.J., specially concurs.

HAYDEN, Presiding Judge (specially concurring).

I concur in the result only.