**IN THE COURT OF APPEALS OF IOWA**

No. 14-1876
Filed January 28, 2015

**IN THE INTEREST OF R.W.,**
**Minor Child,**

**D.W., Mother,**
**Appellant.**
_____

Appeal from the Iowa District Court for Henry County, Emily S. Dean, District Associate Judge.

A mother appeals from the order terminating her parental rights. **AFFIRMED.**

Laura Krehbiel, Donnellson, for appellant mother.

Thomas J. Miller, Attorney General, Janet L. Hoffman, Assistant Attorney General, Darin R. Stater, County Attorney, and Erin Stensvaag, Assistant County Attorney, for appellee State.

Sarah S. James of Whitfield & Eddy, P.L.C., Des Moines, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**POTTERFIELD, J.**

A mother appeals from the order terminating her parental rights, contending the State did not make reasonable efforts to reunify parent and child, and termination is not in the child's best interests.

We conduct a de novo review of termination-of-parental-rights proceedings. *In re P.L.*, 773 N.W.2d 33, 40 (Iowa 2010).

Iowa Code section 232.116(1)(f) (2013) provides that termination may be ordered when there is clear and convincing evidence that a child four years of age or older who has been adjudicated a child in need of assistance (CINA) and removed from the parents' care for at least the last twelve consecutive months cannot be returned to the parents' custody at the time of the termination hearing. R.W. is ten years old, was adjudicated a CINA on November 15, 2012, and has been out of his mother's custody since October 2012—now more than two years. By the mother's own testimony at the termination trial, the child cannot be returned to her at present because her residence is not suitable for the child. Thus, there is clear and convincing evidence to support termination pursuant to section 232.116(1)(f).

We reject the mother's claim that the State did not make reasonable efforts to reunify mother and child. At the time the termination trial began on July 9, 2014, services had been offered for more than twenty months. On the second day of the termination trial, on August 27, 2014, the mother asserted the State had failed to make access to transportation available so she could attend counseling sessions—a service the mother maintains she does not need.

Since October 2012, services have been provided to the family, including parenting skill education, supervised visits, medication management, and community resource referral. The mother finally attended a recommended psychological assessment in September 2013, which resulted in a provisional diagnosis of a delusional disorder. The psychologist recommended the mother be evaluated for possible medication needs and participate in ongoing therapy. In October 2013, a permanency hearing was held and the mother was granted a six-month extension to allow her time to follow through with the recommendations contained in the psychological assessment. Services and visitation continued.

The mother began attending therapy sessions with licensed social worker Eva Ford in December 2013. Ford, testified therapy sessions with the mother came to an end in March 2014. The mother stated—on the second day of the termination trial—she did not continue with therapy because she was unable to afford transportation and DHS had not helped her access transportation.[1] The therapist testified therapy ceased because the mother "did not feel like she was really benefiting." Ms. Ford stated, "I think also she thought that this matter was going to come to court more quickly than it did, and . . . she'd done what she was asked to do, she'd come in . . . . She didn't really from the beginning think she needed it." Ms. Ford opined further therapy would only be of benefit if the mother "wanted a goal on her own" and "it probably wouldn't be an easy fix." The juvenile court found the State made reasonable efforts; we agree. *See In re*

---

[1] Paradoxically, while the mother contended she could not afford transportation, she testified she was in the process of looking to purchase a home that would be suitable for R.W.

*C.W.*, 522 N.W.2d 113, 117 (Iowa Ct. App. 1994) ("While efforts specifically tailored to [the mother's] needs (particularly one finding housing for [her] and [the child]) might have reunified this family, [the mother] did not challenge the offered services or request specific services tailored to her specific problems. A parent's challenge to services should be made when they are offered."); *see also In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) (rejecting reasonable-efforts challenge where parent argues State did not provide treatment "for a deficit the parent claims he does not have").

Moreover, while we recognize the mother loves her son, termination of the mother's parental rights will best provide the child with the stability and consistency he needs. Sara Crozier, the service provider supervisor, testified R.W. is a "challenging child" who is "cognitively limited" and "has pretty significant ADHD." He can be physically and verbally assaultive. He needs structure, consistency, supervision, and redirection, which the mother is not able to provide despite years of services.[2] The mother's visits with the child often end early and have sometimes ended with the mother or a service provider calling the police because the mother was unable to redirect R.W. before his behavior escalated and spiraled out of control. Amy Laughlin (the department social worker assigned to R.W.'s case) testified the mother may be capable of recognizing when R.W.'s conduct is inappropriate; however, she is not willing to address the

---

[2] The mother has her own mental capacity and mental health challenges. Either as a result of her mental capacity or her psychological makeup, she does not believe her parenting skills are inadequate. This family was involved with and received services through the department of human services from 2008 through 2009. In 2012, the mother contacted the department for assistance because she was unable to manage R.W.'s behaviors. She remains unable to parent R.W. safely.

behavior "until it crosses the line from annoying to completely inappropriate or completely out of hand." R.W.'s behaviors do not similarly escalate when he is at his foster home—no physical intervention has ever been required there. It is essential that a parent be able to recognize and acknowledge a child's needs.

The mother contends termination of her rights is not warranted because R.W. is not in a pre-adoptive home. However, we find that termination and the possibility of long-term consistent, suitable care is in the child's best interests. *See In re T.C.*, 522 N.W.2d 106, 109 (Iowa Ct. App. 1994) (noting no termination statutory provision requires a finding that the child is adoptable—"[o]ur governing consideration is the best interest of the child"). The foster father testified that R.W. has been in the foster home since October 2012 and, while not a permanent option for R.W., the foster family is committed to providing R.W. continued care until a permanent home is found. As we have often noted in terms of a parent's behavior, past behavior is our best predictor of future behavior. *See In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). R.W. has shown he is able to maintain acceptable behavior in the foster home, which predicts he can successfully integrate in a permanent home where proper structure and support can be provided for him.

The mother also asserts that severing the child's relationship with his younger sibling is not beneficial. While we do not sever sibling relationships lightly, *see In re L.B.T.*, 318 N.W.2d 200, 202 (Iowa 1982), these siblings have a contentious relationship, and any bond that may have existed has been weakened by that contention, and the fact they have not lived together for two years.

Giving primary consideration to "the child's safety, . . . the best placement for furthering the long-term nurturing and growth of the child, and . . . the physical, mental, and emotional condition and needs of the child," Iowa Code § 232.116(2), we conclude termination of the mother's parental rights to R.W. is in the child's best interests. We therefore affirm.

**AFFIRMED.**