**IN THE COURT OF APPEALS OF IOWA**

No. 19-0719
Filed July 24, 2019

**IN THE INTEREST OF J.B. and J.B.,**
**Minor Children,**

**A.T., Mother,**
       Appellant.

_____

       Appeal from the Iowa District Court for Poweshiek County, Rose Ann

Mefford, District Associate Judge.


       A mother appeals from the termination of her parental rights.  **AFFIRMED.**


       Peter Stiefel, Victor, for appellant mother.

       Thomas J. Miller, Attorney General, and Anna T. Stoeffler, Assistant

Attorney General, for appellee State.

       Dusty L. Clements of Clements Law & Mediation, LLC, Newton, guardian

ad litem for minor children.


       Considered by Potterfield, P.J., and Doyle and May, JJ.

**MAY, Judge.**

The juvenile court terminated a mother's parental rights to her children, Ja.B. and Jo.B. On appeal, the mother contends the juvenile court erred in (1) denying the mother's motion for recusal; (2) denying the mother's motion to continue; (3) granting a motion to amend the termination petition; (4) concluding the statutory requirements for termination were satisfied; (5) finding termination was in the children's best interests; (6) declining to apply a permissive exception to termination; and (7) declining to provide her with an additional six months to work toward reunification.[1] We affirm the juvenile court.

## I. Background Facts and Proceedings

Ja.B. and Jo.B. were born in 2012 and 2016, respectively. Ja.B. suffers from short bowel syndrome, a life-threatening medical condition that requires an intensive treatment regimen. In 2016, the Iowa Department of Human Services (DHS) became involved with this family after receiving reports that Ja.B.'s medical needs were not being met.

Ja.B. received medical care at the Children's Hospital and Medical Center in Omaha, Nebraska. However, the mother did not bring him to several of his scheduled appointments. The hospital banned both parents because they made "concerning statements." As a result, most of Ja.B.'s treatment was transferred to the University of Iowa Hospitals and Clinics.

In an effort to avoid removing the children from the home, the juvenile court ordered DHS to provide daily homemaker-home health aide services to the family.

---

[1] The father's parental rights were also terminated. He did not appeal. His rights are not at issue here.

However, by May 2017, the State applied for removal of the children from the home because of the mother's admitted use of marijuana, the parents' violation of an established safety plan, the presence of methamphetamine paraphernalia in the home, evidence the mother was not following essential medical protocol with regards to Ja.B., and reports that Ja.B. was found playing with knives. The same day, the court issued an order removing the children. Both children were "dirty and unclean" at the time of removal.

Jo.B. entered foster care. Ja.B. was admitted to the University of Iowa hospital for a central line infection. Ja.B. also underwent drug testing. He tested positive for marijuana, methamphetamine, and amphetamine. Upon Ja.B.'s discharge, he joined the same foster family that was caring for Jo.B.

In June 2017, the juvenile court adjudicated Ja.B. as a child in need of assistance pursuant to Iowa Code section 232.2(6)(b), (c)(2), and (e) (2017). The court also adjudicated Jo.B. as a child in need of assistance pursuant to section 232.2(6)(c)(2).

The same month, Ja.B. was admitted to the hospital over concerns of a central line infection. However, the mother did not visit Ja.B. in the hospital because she had an active warrant related to a possession charge. Ultimately, the mother turned herself in and pled guilty to the charge.

Also in June, the mother received referrals for the Parents as Teachers and Parent Partner programs. But in August, the Parents as Teachers provider could not make contact with the mother. So the provider ventured out to her home. The provider found the home abandoned and dismissed the family from the program. The family was also dismissed from the Parent Partner program due to a lack of

engagement. The family again sought out the Parent Partner program in October, but they were again dismissed due to lack of engagement.

In early 2018, the mother was charged with child endangerment for her care of Ja.B. preceding removal. She pled guilty. The district court entered a no-contact order between the mother and the children. It was later modified to permit supervised visitation between the children and mother.

In May, the juvenile court held a permanency and termination hearing. Both parents failed to attend due to "sickness."

The next month, the mother's probation was revoked because she missed two appointments with her probation officer and tested positive for methamphetamine and marijuana.

In October, the juvenile court terminated both parents' rights. Both parents appealed. This court reversed both terminations on procedural grounds. *See In re J.B.*, No. 18-1807, 2018 WL 6706266, at *1 (Iowa Ct. App. Dec. 19, 2018) (concluding "the juvenile court abused its discretion in failing to continue the combined permanency and termination hearing and proceeding to terminate the parents' parental rights").

On remand, the mother moved for the presiding judge to recuse. The mother reasoned that because the judge presided over the first termination hearing and issued an order terminating her parental rights, the judge could not be impartial as the case proceeded forward. The juvenile court denied the motion.

The juvenile court scheduled a permanency and termination hearing for January 23, 2019. On the day before the hearing, the mother moved for a continuance. She argued she had received insufficient notice of the hearing. The

mother did not appear at the hearing, but her attorney did. Her attorney advised the court that the mother had transportation issues and concerns regarding road conditions.

Ultimately, the court granted the continuance and rescheduled the hearing for February. Later, the hearing was again rescheduled for March 20.

On March 19—the day prior to the rescheduled hearing—the State moved to amend the petition to correctly cite one of the statutory grounds for termination with respect to Ja.B.[2] At the termination hearing, the mother's counsel objected to the amendment. Counsel argued the mother is entitled to notice of the grounds for termination at least seven days prior to the hearing. The court granted the motion to amend.

The mother did not appear for the March 20 termination hearing. The mother's counsel moved for a continuance based on the mother's absence. Counsel advised the court that the mother had planned on attending and he did not know why she was absent. He further advised the court that he had received no answer to his text messages and calls to the mother from that morning and the day before. The court denied the motion and proceeded with the termination hearing.

The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(d) and (f) (2018) with respect to Ja.B., and section

---

[2] The petition had cited to Iowa Code section 232.116(1)(h), which applies to children three years old or younger. Because Ja.B. was older than three years, this paragraph was inapplicable to him. The motion to amend sought to change this code reference to section 232.116(1)(f), which apples to children four years of age or older. Both paragraphs (h) and (f) authorize termination if the child cannot be returned to the parent's care. *See* Iowa Code § 232.116(1)(f), (h). Their requirements only differ with respect to the age of the child and the length of time the child is out of the parent's care. *See id.*

232.116(1)(d) and (h) with respect to Jo.B. The mother appealed. Our supreme court transferred the case to this court.

## II. Standard of Review

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented." *In re C.S.*, No. 13-1796, 2014 WL 667883, at *1 (Iowa Ct. App. Feb. 19, 2014). "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

## III. Analysis

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we must determine whether a ground for termination under section 232.116(1) has been established. *Id.* at 472–73. If a ground for termination has been established, we must then consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473 (citation omitted). Finally, we must consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)). We also address any additional issued raised by the parties.

### A. Grounds for Termination

Our first step is to determine if a ground for termination under section 232.116(1) has been established. *See id.* at 472–73. "The State has the burden of proving the grounds for termination by clear and convincing evidence." *In re*

*H.L.B.R.*, 567 N.W.2d 675, 677 (Iowa Ct. App. 1997). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We choose to address grounds for termination under Iowa Code section 232.116(1)(d) for both children.

Section 232.116(1)(d) authorizes termination of a parent's parental rights when both of the following have occurred:

> (1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.
> (2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

Here, the mother concedes the first element but challenges the second.

We agree with the juvenile court that the mother was offered corrective services and the circumstances leading to adjudication continue to exist. The juvenile court adjudicated Ja.B. as a child in need of assistance under Iowa Code section 232.2(6)(b).[3] The court cited several conditions leading to the adjudication including, but not limited to: the medical neglect of Ja.B., the parents' methamphetamine and marijuana use, and the mother's failure to comply with drug testing. The court then ordered the parents to cooperate with drug testing, obtain

---

[3] A child is a child in need of assistance under Iowa Code section 232.2(6)(b) when the child's "parent, guardian, other custodian, or other member of the household in which the child resides has physically abused or neglected the child, or is imminently likely to abuse or neglect the child."

substance-abuse and mental-health evaluations, and comply with the resulting treatment recommendations. The court also ordered the parents to attend all of Ja.B.'s medical appointments.

However, the mother largely failed to comply with the court's orders despite a plethora of offered services. She was offered gas cards to assist her travel to substance-abuse treatment. Family safety, risk, and permanency (FSRP) service providers offered transportation to necessary appointments, including drug testing. Service providers also offered consultations regarding mental health and substance abuse.

Even so, the mother failed to ever complete a substance-abuse or mental-health evaluation. She never completed substance-abuse treatment. She never completed a drug test for DHS. She failed to attend all of Ja.B.'s medical appointments. When visitation occurred in the family home, the floor was covered by cigarette butts and butane fuel, and there were "cigarettes and piles of ashes" on the furniture.

Yet we can hardly overstate the need for this mother to provide a clean home and consistent attention to these children's needs. Ja.B., in particular, requires a clean environment and attentive care. He has both a gastrointestinal tube and a central line. Infection of the central line has serious health implications. The administration of intravenous nutrition feeding, known as TPN, through Ja.B.'s central line is critical to his care. Moreover, the formulation of the TPN changes weekly depending on the results of weekly lab testing. Accordingly, his caregiver must take him to weekly appointments so the TPN formulation can be adjusted to his needs each week.

The mother has not shown she can provide this critical care. Because the mother has not completed any mental-health or substance-abuse evaluations, we cannot say the issues that caused her to neglect Ja.B. and his medical needs are now resolved. Rather, because she received no treatment, we infer her mental-health and substance-abuse issues continue. Likewise, because the mother failed to complete drug testing when requested by the DHS, we assume each test would have resulted in a positive result. *Cf. In re C.W.*, No. 14-1501, 2014 WL 5865351, at *2 (Iowa Ct. App. Nov. 13, 2014) (noting missed drug screenings are presumed positive).

We conclude the State offered the mother services to correct the conditions leading to adjudication. Even so, those conditions remain. Termination is authorized pursuant to Iowa Code section 232.116(1)(d). The first step of our analysis is satisfied.

## B. Best-Interest Framework

Our next step is to consider the best-interest framework set forth in section 232.116(2). *A.S.*, 906 N.W.2d at 473. Section 232.116(2) provides in relevant part:

> In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.

*See* Iowa Code § 232.116(2)(a), (b), (c) (identifying factors that may be relevant to the court's best-interest analysis).

Here, the mother contends termination is not in the children's best interest. She does not provide any support for her contention, and we find no such support

in the record. The children suffered while in the mother's care. Both experienced developmental delays. In contrast, both children began progressing once removed from the mother's home. We also note the foster placement has expressed interest in adopting the children. *See id.* § 232.116(2)(b). We conclude termination is in the children's best interest. The second step of our analysis is satisfied.

## C. Exceptions

Next, we consider section 232.116(3), which provides as follows:

> The court need not terminate the relationship between the parent and child if the court finds any of the following:
> (a) A relative has legal custody of the child.
> (b) The child is over ten years of age and objects to the termination.
> (c) There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.
> (d) It is necessary to place the child in a hospital, facility, or institution for care and treatment and the continuation of the parent-child relationship is not preventing a permanent family placement for the child.
> (e) The absence of a parent is due to the parent's admission or commitment to any institution, hospital, or health facility or due to active service in the state or federal armed forces.

"[T]he parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3). *A.S.*, 906 N.W.2d at 476. If the parent proves an exception, this court *may* conclude termination is inappropriate. *Id.* We are not, however, *required* to reach that conclusion. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). Rather, we exercise our discretion, "based on the unique circumstances of each case and the best interests of the child," to determine whether the parent-child relationship should be saved. *Id.* (citation omitted).

The mother argues the strength of the parent-child bond should preclude termination pursuant to section 232.116(3)(c). We disagree. While the FSRP notes indicate the children share a bond with the mother, nothing suggests that bond is strong enough to overcome the mother's parenting deficiencies. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) ("[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent]'s inability to provide for [the child]'s developing needs.").

**D. Additional Issues**

We now turn to the mother's remaining challenges.

**1. Additional time**

The mother contends the juvenile court erred in declining to provide an additional six months to work toward reunification. The juvenile court may defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

The mother points to no changes that will likely eliminate the need for removal in the next six months. Moreover, the mother's "past performance is indicative of the quality of care [s]he is capable of providing in the future." *In re N.A.S.*, No. 13-0074, 2013 WL 988895, at *2 (Iowa Ct. App. Mar. 13, 2013); *accord In re C.W.*, 554 N.W.2d 279, 283 (Iowa Ct. App. 1996) ("Evidence from a parent's past performance may be used to gauge the quality of life the child may receive in

the future."). Here, the mother's past reveals her refusal to make the changes necessary to adequately care for her children. The juvenile court reasonably concluded it could not rely on the mother to turn over a new leaf within the next six months.

### 2. Motion for recusal

We next address the mother's claim that the juvenile court erred in denying her motion for recusal. "We review a court's decision to recuse or not to recuse itself for an abuse of discretion." *Taylor v. State*, 632 N.W.2d 891, 893 (Iowa 2001). "An abuse of discretion is found when the . . . court has clearly exercised its discretion on untenable grounds or acted unreasonably." *Id.* (citation omitted).

The mother contends the presiding judge's impartiality was reasonably called into question because the judge entered findings of facts and conclusions with regard to the first termination proceeding. The mother contends this compromised the judge's ability to function as a "neutral and detached judge." *Cf. State v. Mann*, 512 N.W.2d 528, 532 (Iowa 1994) (noting litigants have "a constitutional right to have a neutral and detached judge").

However, "[a]ctual prejudice must be shown before a recusal is necessary. The appearance of impropriety is not sufficient to merit recusal." *In re C.W.*, 522 N.W.2d 113, 117 (Iowa Ct. App. 1994). The party seeking recusal "has the burden of establishing prejudice with allegations of fact." *See State v. Smith*, 282 N.W.2d 138, 142 (Iowa 1979).

Here, we find the judge's past involvement in the case is insufficient to warrant recusal. *See C.W.*, 522 N.W.2d at 117. Certainly, the mother has not identified any evidence that the presiding judge was actually prejudiced against

her. Moreover, in its termination order, the court specifically noted it did not take judicial notice of the transcript or ruling from the original termination proceeding. This helps to alleviate any concern that the prior proceeding impacted the current proceeding.

We conclude the juvenile court did not abuse its discretion in denying the motion for recusal.

### 3. Motion to continue

The mother also argues the court should have granted her motion to continue the termination hearing due to her absence. "[O]ur review of a . . . court's denial of a motion for continuance is for an abuse of discretion." *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). "Where constitutional rights are implicated, our review is de novo." *In re R.B.*, 832 N.W.2d 375, 378 (Iowa Ct. App. 2013).

With respect to the constitutional dimensions of the mother's argument, she argues her absence from the hearing inhibited her due process rights. "Due process requires 'fundamental fairness' in judicial proceedings." *In re J.S.*, 470 N.W.2d 48, 52 (Iowa Ct. App. 1991). When "a parent receives notice of the petition and hearing, is represented by counsel, counsel is present at the termination hearing, and the parent has an opportunity to present testimony . . . , we cannot say the parent has been deprived of fundamental fairness." *Id.* The question here is whether the mother's absence deprived her of an opportunity to present testimony.

In answering that question, we begin by noting due process does not provide parents with an absolute right to be physically present at a termination hearing. *See M.D.*, 921 N.W.2d at 236 (noting incarcerated parents must have

right to participate by phone or other means of communication). Moreover, in this case, we find the mother had an opportunity to be present and provide testimony, but she did not avail herself of it. She was not prevented from participating through some form of detainment or procedural mechanism. Although she claims her absence was caused by transportation woes[4] and illness, we find no support in the record for these claims. We find no violation of due process.

Likewise, with respect to the non-constitutional dimensions of the mother's argument, we find no abuse of discretion. "Motions to continue 'shall not be granted except for good cause.'" *R.B.*, 832 N.W.2d at 378 (quoting Iowa Ct. R. 8.5). Here, the mother's counsel provided no justification for the continuance other than the absence of the mother. This does not amount to good cause, particularly given the mother's history of missing court hearings. *See, e.g.*, *In re K.M.*, No. 16-0778, 2016 WL 4379361, at *2 (Iowa Ct. App. Aug. 17, 2016) (concluding the juvenile court did not abuse its discretion when it denied a motion to continue on the basis that the parent was not present).

### 4. Motion to amend petition/denial of the mother's motion to continue

Finally, the mother challenges the grant of the State's motion to amend and the denial of her related motion to continue. The State moved to amend its petition to cite the correct paragraphs of Iowa Code section 232.116(1). Specifically, as to Ja.B., the State sought to clarify that it was relying on paragraph (f), which applies to children of Ja.B.'s age, rather than paragraph (h), which applies to children

---

[4] An FSRP worker previously informed the mother that a worker would assist in transportation to court if the mother requested it. Yet, it appears the mother did not make such a request.

younger than Ja.B.  After the court permitted this amendment, the mother moved for a continuance so she could have the seven days notice required by Iowa Code section 232.112(3).  The court denied the mother's motion.

As explained above, however, we have found that the State met its burden of proving statutory grounds for termination under paragraph (d).  Therefore, we need not address whether there were also grounds for termination under paragraph (f).  *See A.B.*, 815 N.W.2d at 774.  Accordingly, we need not address the State's motion to amend or the mother's related motion to continue, both of which concerned paragraph (f) but not paragraph (d).

## IV. Conclusion

The juvenile court properly terminated the mother's parental rights to both children.

**AFFIRMED.**