# IN THE COURT OF APPEALS OF IOWA

No. 22-1533
Filed December 7, 2022

**IN THE INTEREST OF X.M. and B.M.,**
**Minor Children,**

**S.M., Father,**
      Appellant.

_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Judith M. O'Donohoe of Elwood, O'Donohoe, Braun & White, Charles City, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Mark A. Milder of Mark Milder Law Firm, Denver, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Ahlers and Buller, JJ.

**BULLER, Judge.**

The father of B.M. and Xe.M., born in 2020 and 2021, appeals the termination of his parental rights. We view his petition as raising the following arguments: (1) the State failed to prove the statutory grounds for termination, (2) termination is not in the best interests of the children, (3) the mother's custody of the children and the father's bond with the children preclude termination, (4) the juvenile court judge should have recused herself due to bias, and (5) the court should wait until resolution of his criminal appeal to decide whether to terminate his parental rights. We reject all of the father's arguments on appeal and affirm.

## I. Background Facts and Proceedings

We set out the factual background when we affirmed B.M.'s child-in-need-of-assistance (CINA) adjudication. *See In re B.M.*, No. 21-0820, 2021 WL 3661402, at *1 (Iowa Ct. App. Aug. 18, 2021). Briefly, the father and mother here are also the parents of Xa.M. *Id.* Xa.M. died in August 2019 after sustaining an injury while in the father's sole care. "Law enforcement became involved because examination of [Xa.M.] revealed skull fractures, retinal hemorrhaging, and brain damage. Medical personnel . . . concluded the injuries were caused by non-accidental trauma consistent with abuse." *Id.* The father told law enforcement "he was walking with the child and fell in the kitchen, hitting the counter and then falling with his full body weight on the child." *Id.*

The father was arrested in March 2020 and charged in Xa.M.'s death. In April, the district court granted the father pre-trial release on bond, with the condition he have no unsupervised contact with minor children. The father and mother continued their romantic relationship, and B.M. was born in August 2020.

To satisfy the terms of his pre-trial release, the father moved out of the home he shared with the mother prior to B.M.'s birth. B.M. was removed from the parents' custody and care shortly after birth and later adjudicated in need of assistance. In May 2021, the juvenile court returned B.M. to the mother's home and allowed the father supervised visitation. Xe.M. was born in October 2021. Xe.M. was also adjudicated in need of assistance shortly after birth; the court removed the child from the father's custody and care, transferred sole custody to the mother for placement in her home, and allowed the father supervised visitation.

Meanwhile, the father's criminal trial began in January 2022, after which the jury found him guilty of involuntary manslaughter and child endangerment resulting in death. In returning a guilty verdict for involuntary manslaughter, the jury found the following elements beyond a reasonable doubt, based on the marshaling instruction:

> 1. On or about . . . August 2019, the defendant recklessly committed the crime of assault against [Xa.M.].
> 2. The defendant did the act in a manner likely to cause death.
> 3. When the defendant committed the assault, the Defendant unintentionally caused the death of [Xa.M.], a child.

The jury found the following elements for child endangerment resulting in death:

> 1. On or about . . . August 2019, in Floyd County, Iowa, the defendant was the parent or a person having custody or control of [Xa.M.].
> 2. [Xa.M.] was under the age of fourteen years.
> 3. The defendant acted with knowledge that he was creating a substantial risk to [Xa.M.]'s physical health or safety.
> 4. The defendant's act resulted in the death of [Xa.M.].

At sentencing, the manslaughter conviction merged into the child-endangerment-resulting-in-death conviction, and the court sentenced the father to a term of incarceration not to exceed fifty years with a mandatory minimum of fifteen years.

He filed a notice of appeal, which was pending at the time of the termination hearing.

After sentencing, separate petitions were filed in April 2022 to terminate the father's parental rights. The juvenile court held the termination hearing on August 30. The mother testified she and the children have had no contact with the father since he was taken into custody in April. The mother also testified she has a new boyfriend and is ready for herself and the children to move on without the father. The father testified he has no intention of interfering with the mother's new relationship. After the hearing, the court terminated the father's rights to both children under Iowa Code section 232.116(1)(h) and (j). The CINA adjudication continued as to the mother, with the juvenile court pointing to the mother's belief the father "does not pose a risk to the children" as the sole protective concern for the children in her care. (She is not part of this appeal.) The father appeals.

## II. Standard of Review

We generally review an order to terminate parental rights de novo. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)). When a specific issue requires a different standard of review, we discuss that standard with the issue below.

## III. Three-Step Analysis

We begin with our three-step analysis for considering termination of parental rights under Iowa Code chapter 232 (2022). *See In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021).

*A. Statutory Grounds for Termination*

"First, we must determine 'whether any ground for termination under section 232.116(1) has been established.'" *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016)). The juvenile court relied on sections 232.116(1)(h) and 232.116(1)(j), and we find both grounds supported by the record.

Section 232.116(1)(h) allows the juvenile court to terminate parental rights if it finds all of the following:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The father challenges the third and fourth elements, whether the children were properly removed from his custody for the required time and whether there is sufficient evidence the children could not be returned to his custody. Iowa Code § 232.116(1)(h)(3), (4). We are not persuaded by either challenge.

As to whether the children were properly removed for the required time, the juvenile court entered orders explicitly removing both children from the father's custody shortly after birth, and removal from the father has been continuous for well over six months prior to the termination hearing. The fact that B.M. was later returned to the mother's custody and Xe.M. was never removed from the mother's custody is immaterial. Our supreme court has interpreted the use of "parents" to include the singular, concluding section 232.116(1) does not "prevent termination

of the noncustodial parent's rights when the children are placed in the separate home of the other parent." *In re N.M.*, 491 N.W.2d 153, 156 (Iowa 1992); *see also In re M.S.*, 889 N.W.2d 675, 686–87 (Iowa Ct. App. 2016) (finding the interpretation of "parents" to include one parent "aids the State in this case in establishing the third element of Iowa Code section 232.116(1)(h)(3) which requires proof the child was removed from the parents' home, or a parent's home," for the required time); *contra In re C.F.-H.*, 889 N.W.2d 201, 205–08 (Iowa 2016) (finding a child was not "removed" for purposes of section 232.116(1) when the child was allowed to remain in the mother's home with no formal removal order).

As to whether there was sufficient evidence the children could not be returned to the father's custody, the father was in prison on the date of the termination hearing. The father's petition, without citation to legal authority, appears to suggest we should analyze the possibility that the children could someday be returned to his custody if his felony convictions are reversed on appeal. We find the father's failure to cite authority waived the argument. *See* Iowa R. App. P. 6.903(2)(g) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). Even if the father preserved this argument for our consideration, our supreme court has foreclosed such an analysis, finding that the statutory language "at the present time" refers to the date of the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014). Sensibly, the law focuses on whether the children could be returned to parental custody at the time of the hearing, rather than the series of future hypotheticals and conditions precedent offered by the father.

Because the children were removed from the father's custody for the required time, and because there was sufficient evidence the children could not be returned to the father's custody, the State proved at least one ground for termination under section 232.116(1)(h).[1]

The second ground for termination, section 232.116(1)(j), is also supported by the record. That provision allows for termination when (1) the child has been adjudicated in need of assistance and custody has been transferred for placement pursuant to section 232.102 and (2) "[t]he parent has been imprisoned for a crime against the child, the child's sibling, or another child in the household." Iowa Code § 232.116(1)(j). As to the first element, the children were removed from the father and placed with the mother during the CINA proceedings. As to the second, the father was convicted of and incarcerated for a crime against the children's sibling. It is immaterial that the criminal appeal remains pending. *In re E.M.,* No. 22-0497, 2022 WL 2824765, at *2 (Iowa Ct. App. Jul. 20, 2022); *see also In re A.M.*, No. 21-1225, 2021 WL 5106043, at * 2 (Iowa Ct. App. Nov. 3, 2021) (recognizing paragraph (j) allows the court to terminate parental rights if the State shows the parent was imprisoned for "any length so long as the underlying crime was against the child, their sibling, or another child living in the household").

---

[1] To the extent the father argues the allegedly improper removal affected the CINA proceeding, his argument is moot after the termination of his parental rights. *See In re T.R.,* 705 N.W.2d 6, 11 (Iowa 2005) (finding "the change of custody portion of the permanency order is temporary in nature" and "will inure or be subsumed in the final termination order"); *see also Riley Drive Ent. I, Inc. v. Reynolds*, 970 N.W.2d 289, 296 (Iowa 2022) ("Courts exist to decide cases, not academic questions of law. For this reason, a court will generally decline to hear a case when, because of changed circumstances, the court's decision will no longer matter. This is known as the doctrine of mootness." (quoting *Homan v. Branstad*, 864 N.W.2d 321, 328 (Iowa 2015)).

*B. Best Interests of the Children*

In the second step, "we next 'determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights.'" *A.B.*, 957 N.W.2d at 294 (quoting *M.W.*, 876 N.W.2d at 219–20). When evaluating the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The father asserts his parenting during visitation has been "very good." Even if he exceeded expectations during his limited time with fully supervised visitation, the record contains no evidence the father addressed the issues underlying removal. A jury found the father criminally responsible for the death of Xa.M. While the father maintains the death was an accident, there is no dispute Xa.M. died from serious injury sustained in the father's care, and the jury found beyond a reasonable doubt that the father acted recklessly (for the involuntary manslaughter conviction) or with knowledge that he was creating a substantial risk to the child's health or safety (for the child-endangerment-resulting-in-death conviction).

On our de novo review of the record, we find the father continues to pose a safety risk to the children and that termination is in the best interests of the children. To the extent the father argues delaying termination until resolution of his criminal appeal is in the children's best interests, "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and

be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

### C. Permissive Exceptions to Termination

Our third step is to "consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *A.B.*, 957 N.W.2d at 294 (quoting *M.W.*, 876 N.W.2d at 220). The father points to the mother's custody of the children and his bond with the children as reasons to maintain his parental rights. Under section 232.116(3)(a) and (c), we need not terminate parental rights if "[a] relative has legal custody of the child" or "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The father bears the burden to prove these permissive exceptions. *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).

While the mother has legal custody of the children, "An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child. The child's best interests always remain the first consideration." *Id.* at 475 (quoting *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997)). As explained above, a jury found the father criminally responsible for the death of an older sibling. Even considering the mother's custody of the children, termination of the father's parental rights is in the best interests of the children.

Witnesses testified the father has a bond with the children. However, we question the strength of this bond due to the young ages of the children, that they have been out of the father's custody for almost their entire lives, and the limited nature of the father's visitation. Also, "the existence of a bond is not enough. The

law requires clear and convincing evidence that 'termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.'" *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (quoting Iowa Code § 232.116(3)(c)). Considering the ongoing safety risk the father poses to the children, he failed to carry his burden to prove his bond with the children is strong enough to preclude termination.

## IV. Other Arguments

### A. Recusal

The father argues the juvenile court judge should have recused herself, alleging the judge was personally biased against him due to the court's prior rulings throughout the CINA and termination proceedings. *See* Iowa Code § 602.1606(1)(a) (providing a judge is disqualified from a proceeding if the judge "has a personal bias or prejudice concerning a party"). We review the juvenile court's denial of a motion to recuse for abuse of discretion. *In re S.D.*, 671 N.W.2d 522, 528 (Iowa Ct. App. 2003). "In order to show an abuse of discretion, a party must demonstrate the court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* The father bears the burden of proving "actual prejudice." *In re C.W.*, 522 N.W.2d 113, 117 (Iowa Ct. App. 1994).

In response to the father's motion, the juvenile court wrote:

This Court does not have personal feelings, let alone bias, against any litigant or their attorney. Finding facts or issuing rulings that are adverse to him or that doesn't adopt his argument does not constitute a bias. All facts found and rulings issued have been solely based on the evidence presented in court hearings and the applicable law. Many of those findings and rulings have already been affirmed on

> appeal, and one cannot realistically believe a different judge would rule differently on termination given the facts of these cases.

We agree with the judge and, as explained above, we agree with the termination of the father's parental rights after our de novo review. The father did not show and has not proven that the judge committed any errors out of personal bias. Thus, the father did not carry his burden to prove recusal was required, and we find no abuse of discretion in the denial of the motion to recuse.

### B. Delaying Termination

The father argues the juvenile court should have waited until resolution of his criminal appeal to decide whether to terminate his parental rights. It is unclear on what grounds the father asks us to delay termination. To the extent he argues for a general continuance until resolution of his criminal appeal, we review the denial of a motion to continue for abuse of discretion. *In re A.H.*, 950 N.W.2d 27, 33 (Iowa Ct. App. 2020). The court denied his request to delay termination because chapter 232 does not require or contemplate a delay until resolution of a criminal appeal and because his sentence at the time of the hearing required him to serve a mandatory minimum term of incarceration of fifteen years. We find no abuse of discretion in refusing to delay termination.

To the extent the father requests an additional six months to work toward reunification, such an extension requires that the juvenile court "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b); *see also id.* § 232.117(5) (allowing the juvenile court to enter an

order under section 232.104 in lieu of termination). "The burden for proving the additional time would eliminate the need for removal rests on the parent seeking it." *In re B.C.*, No. 22-0809, 2022 WL 2824768, at *2 (Iowa Ct. App. July 20, 2022). The record contains no details of the father's appeal or any reason to believe it would be successful at any point, much less within six months. The father has failed to carry his burden or even generate a fact question on the relevant statutory factors.

Finally, the father makes similar arguments in a "motion for order delaying decision" that was filed after this case was transferred to our court and submitted for decision without oral argument. We question whether this is a permissible motion under our rules of appellate procedure. In any event, we deny the motion, for the reasons expressed in this opinion.

"Children should not be forced to wait for their parent to be able to care for them, particularly when the court has little evidence to rely upon to believe the circumstances will be different in six months." *In re M.M.*, No. 15-0214, 2015 WL 1332330, at *2 (Iowa Ct. App. Mar. 25, 2015). We reject any request for an additional six months to work for reunification.

## V. Conclusion

The State proved at least one statutory ground for termination, termination is in the best interests of the children, and no exception precludes termination. We also find that the juvenile court judge did not abuse her discretion in denying the father's motion for recusal and that delaying termination and our decision on appeal until resolution of his criminal appeal is not appropriate.

**AFFIRMED.**